UNITED STATES, Appellee,

v.

Tommy L. RAMSEY, Technical Sergeant, U.S. Air Force, Appellant.

No. 60,404.
ACM 26524.

U.S. Court of Military Appeals.

Aug. 10, 1989.

For Appellant: *Major Lynne H. Wetzell* (argued); *Colonel Richard F. O'Hair* (on brief); *Colonel Leo L. Sergi.*

For Appellee: *Major Carole W. Hanson* (argued); *Colonel Joe R. Lamport* and *Lieutenant Colonel Robert E. Giovagnoni* (on brief).

*Opinion of the Court*

COX, Judge:

Appellant was tried by a general court-martial with members. On his pleas, he was convicted of conspiracy to possess and distribute drugs; four other drug offenses; aggravated assault; resisting apprehension; and carrying a concealed weapon, in violation of Articles 81, 112a, 128, 95, and 134, Uniform Code of Military Justice, 10

USC §§ 881, 912a, 928, 895, and 934, respectively. He was sentenced to a dishonorable discharge from the Air Force, confinement for 15 years, and accessory punishments. Acting pursuant to a pretrial agreement, the convening authority reduced the term of confinement to 14 years but otherwise approved the sentence. The Court of Military Review affirmed the approved findings and sentence. 26 MJ 669 (1988).

The issue here is whether, for speedy-trial purposes, the Government should be held accountable for the time involved in processing an interlocutory government appeal of a ruling by the military judge. In addition, after considering appellant's petition for grant of review, we specified the following issue:

WHETHER THE MILITARY JUDGE CORRECTLY CONCLUDED THAT THE EXCLUSIONS PROVIDED IN R.C.M. 707(c) WERE APPLICABLE IN THIS CASE.

The aggravated assault (appellant literally stabbed his detailed military defense

counsel in the back with a knife) occurred on February 6, 1987.[1] This act and other aberrant behavior on the part of appellant led to an expeditious inquiry into his sanity. After numerous pretrial proceedings, the case was set for the initial hearing in accordance with Article 39(a), UCMJ, 10 USC § 839(a), on June 9, 1987.

At that hearing, prior to pleas, defense counsel moved for appropriate relief, requesting that the military judge instruct the members on the standard for mental responsibility as it existed prior to November 14, 1986, the effective date of Article 50a, UCMJ, 10 USC § 850a.[2] The defense argued that a conviction under the new standards would amount to an *ex post facto* conviction since the changes to the Manual for Courts–Martial, United States, 1984, had not been published in the Federal Register at the time of the assault. Counsel further argued that those changes were not incorporated into the Manual until June

---

1. The victim sustained serious injuries. The first rescuer on the scene was the circuit defense counsel, and a military judge was among those who subdued the assailant. These circumstances materially contributed to the delay in the case since many Air Force legal personnel in Europe were disqualified from serving on the case due to their close association with one or more of the potential witnesses.

2. Prior to November 14, 1986, there was no provision in the Uniform Code of Military Justice regarding mental responsibility. RCM 916(k)(1), Manual for Courts–Martial, United States, 1984, set forth a complete defense of lack of mental responsibility, based on the familiar "lacks substantial capacity" formulation. Also, RCM 916(k)(2) set forth a "[p]artial mental responsibility" formula, which might be used to rebut *mens rea*. *See Ellis v. Jacob*, 26 MJ 90, 92 (CMA 1988).

Effective November 14, 1986, Article 50a, UCMJ, 10 USC § 850a, provides, in relevant part:

(a) It is an affirmative defense in a trial by court-martial that, at the time of the commission of the acts constituting the offense, the accused, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of the acts.

*Mental disease or defect does not otherwise constitute a defense.*

(b) *The accused has the burden of proving the defense of lack of mental responsibility by clear and convincing evidence.*

(Emphasis added.)

In response to the enactment of Article 50a, RCM 916(k) was revised to read:

(1) *Lack of mental responsibility.* It is an affirmative defense to any offense that, at the time of the commission of the acts constituting the offense, the accused, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his or her acts. Mental disease or defect does not otherwise constitute a defense.

(2) *Partial mental responsibility.* A mental condition not amounting to a lack of mental responsibility under subsection (k)(1) of this rule is not a defense, *nor is evidence of such a mental condition admissible as to whether the accused entertained a state of mind necessary to be proven as an element of the offense.*

(Emphasis added.) This revision of the Manual for Courts–Martial, United States, 1984, was to "take effect on 12 March 1987" and "apply to any offense committed on or after November 14, 1986." Its origin was Section li., Exec. Order 12,586, dated March 3, 1987, which was published in the Federal Register on March 9, 1987. 52 Fed.Reg 7105.

1, 1987 [3]—just 8 days before the Article 39(a) session—and were still not available to the field as of that moment.

The military judge denied the request to apply the older military legal standard for sanity. However, he agreed that the defense could present evidence of lack of mental responsibility as to any offense requiring specific intent or knowledge on appellant's part.[4]

After resolution of other preliminary matters, trial counsel moved for a continuance under RCM 908, Manual, *supra*, to allow the Government to appeal this decision to the United States Air Force Court of Military Review pursuant to Article 62(a), UCMJ, 10 USC § 862(a),[5] or, in the alternative, to seek "an extraordinary writ." Trial counsel noted that, in any event, due to the judge's unexpected ruling on the scope of *mens rea* evidence, he would not be ready to conduct *voir dire* of the members until the following morning. Though expressing skepticism as to the reviewability of his decision, the military judge twice recessed the court-martial while the Government pondered its next move.

On June 11, 1987, the Court of Military Review stayed the proceedings to review the ruling. However, on July 17, 1987, it dissolved the stay, concluding that the matter was not properly appealable under Article 62(a). Treating the appeal as a petition for extraordinary relief in the nature of a writ of mandamus, the Court of Military Review also held that Judge Mahoney's ruling did not amount to a judicial usurpation of power sufficient to invoke mandamus. *United States v. Mahoney*, 24 MJ 911 (AFCMR 1987).

■■■ When trial resumed, appellant moved to dismiss the charges and specifications for lack of speedy trial. The issue was tried on a stipulated chronology. Judge Mahoney entered specific findings of fact and drafted a chronology based on the stipulation. We have attached his findings and chronology to this opinion as an appendix and commend use of this format to military judges deciding speedy-trial motions. In calculating the time attributable to the United States, Judge Mahoney excluded the 36 days encompassed by the appeal of his ruling. We hold that he was correct in his determination that the Government was not accountable for the period between the date of notification of appeal (June 11) and the date the stay was dissolved (July 17).

RCM 707(c)(1)(D) and (E) provide that time spent in prosecuting a government appeal under RCM 908 (Art. 62) or a peti-

**3.** June 1, 1987, is the publication date of Change 3 to the Manual for Courts–Martial.

**4.** Specifically, Judge Mahoney ruled that Article 50a, which went into effect prior to the offenses as to which sanity was in issue, was applicable to appellant's trial. However, he ruled that Exec. Order No. 12,586 and revised RCM 916(k), which became effective after these offenses, were inapplicable. *See* n. 2, *supra*. The judge also noted that

the provision of RCM 916(k)(2) goes one step further [than Article 50a], and precludes the admission of evidence of partial mental responsibility—not as a defense—but in refutation of prosecution evidence tending to establish a required state of mind as an element of a charged offense.

He went on to say:

"Without commenting on whether that provision [RCM 916(k)(2) ] is within the rule-making power of the President, the court finds that it exceeds the direct requirements of Article 50a."

Since the effective date of the Executive Order and the RCM occurred after the offense, he ruled that those provisions, if applied to appellant, would violate the *ex post facto* clause of the Constitution. *See* U.S. Const. art. I, § 9, cl. 3. Some 10 months after Judge Mahoney's ruling, we reached a similar result, except that we did comment on the extent of the President's rule-making power. *Ellis v. Jacob, supra* 26 M.J. at 92–93.

**5.** Article 62(a)(1) provides:

In a trial by court-martial in which a military judge presides and in which a punitive discharge may be adjudged, the United States may appeal an order or ruling of the military judge *which terminates the proceedings* with respect to a charge or specification *or which excludes evidence* that is substantial proof of a fact material in the proceeding. However, the United States may not appeal an order or ruling that is, or that amounts to, a finding of not guilty with respect to the charge or specification. (Emphasis added.)

tion for extraordinary relief by either party shall not be included in calculating speedy-trial accountability. However, Rule 707(c)(1)(D) specifically states that time is not excludable if "it is determined that the appeal was filed solely for the purpose of delay with the knowledge that it was totally frivolous and without merit." While this language is not specifically included in subsection (E) with regard to extraordinary writs, the same limitations apply. The Government cannot hide behind rules to circumvent speedy trial. *United States v. Maresca*, 28 MJ 328 (CMA 1989).

Appellant contends that in this case the United States acted solely for the purpose of delaying the proceedings. He points to the statement of trial counsel that he was not ready to conduct *voir dire* as evidence that the Government was not prepared for trial.

 This type of request for a recess is not uncommon in trial practice. Many times counsel will encounter unexpected rulings, requiring time to rethink trial tactics or produce other witnesses to resolve unforeseen proof problems. If, however, a recess or continuance is requested solely because the Government is not prepared to go forward with evidence on the merits, such time should not be excluded from its speedy-trial accountability.

The record does not suggest that the recess was requested for such a purpose. Taken in context, trial counsel freely and honestly admitted that he was surprised by the judge's ruling and that his *voir dire* would be substantially altered as a result. The ruling constituted a major setback for his case, and he needed to determine whether he should request the Court of Military Review to intervene.

 The time taken by such an appeal, and by implication the 72 hours allowed by RCM 908 to determine whether to seek appellate relief, are excludable from government accountability unless the Government is acting in bad faith. RCM 707(c)(1)(D). The fact that this appeal was decided against the United States does not necessarily indicate that it was frivolous.[6] As the Court of Military Review observed below:

A frivolous appeal is one where the law is so clear and well-established that continued litigation is evidence of bad faith.... At the time the government sought an interlocutory ruling on the trial judge's decision as to availability of the lack of mental responsibility defense, the question was one of first impression. That we ruled against the government does not mean that the outcome was obvious or that the arguments advanced were without merit.

26 MJ at 671 (citations omitted).

While the rulings by the military judge and the Court of Military Review presaged our own determination of the issue of partial mental responsibility, it was an open question at the time.[7] Further, the Manual itself expressly, but erroneously, stated that an accused could not avail himself of the defense of partial mental responsibility. RCM 916(k)(2). Thus, the United States had an apparently tenable legal argument when it sought to overturn the military judge's decision.

We, therefore, conclude that the military judge and the Court of Military Review were correct in holding that the Government should not be accountable for the time attributable to the appeal[8] and that appellant's speedy-trial rights were not violated.

The decision of the United States Air Force Court of Military Review is affirmed.

Chief Judge EVERETT and Judge SULLIVAN concur.

---

6. We see no difference whether the action of the United States is characterized as a government appeal under Article 62(a) or as an extraordinary-writ petition. As noted elsewhere, the Court of Military Review treated the case as though both forms of action had been filed.

7. *See Ellis v. Jacob, supra* at n. 2 herein.

8. Appellant's arguments concerning the remaining periods of time excluded by the military judge are without merit.

APPENDIX

IN THE SECOND JUDICIAL CIRCUIT
U.S. AIR FORCE TRIAL JUDICIARY

| | | |
|---|---|---|
| U N I T E D S T A T E S ) | | |
| ) | | |
| v. ) | Essential Findings and Ruling | |
| ) | on Speedy Trial Motion | |
| TSgt Tommy L. Ramsey, USAF ) | | |
| 52 CRS, Spangdahlem AB, FRG ) | 17 August 1987 | |

In the foregoing general court-martial convened at Bitburg AB, the
defense moved to dismiss the charges and specifications for denial of
the accused's right to a speedy trial (App Ex XIII). The prosecution
replied (App Ex XII), and a chronology of events was stipulated (App
Ex XI). Additionally, the accused moved for a speedy trial on 22 Jun
87 (App Ex XVI).

ESSENTIAL FINDINGS. The court accepts the chronology as set forth in
Appellate Exhibit XI, and makes the following findings of fact with
respect to the government's accountability for the processing of this
case to trial:

| Date(s) | Event(s) | Julian date | Elapsed days | Gov't days |
|---|---|---|---|---|
| 06 Feb 87 | Accused placed in pretrial confinement | 37 | 0 | 0 |
| 07 Feb 87 | Defense delay to 17 Mar for IDC | 38 | 1 | 0 |
| 09 Feb 87 | Mental Responsibility exam begins | 40 | 3 | 0 |
| 19 Feb 87 | Mental Responsibility exam completed | 50 | 13 | 0 |
| 17 Mar 87 | Defense delay terminates | 76 | 39 | 0 |
| 17 Mar 87 | Defense delay of Art 32 (one day) | 76 | 39 | 0 |
| 18 Mar 87 | Article 32 Investigation held | 77 | 40 | 1 |
| 23 Mar 87 | Article 32 Investigation complete | 82 | 45 | 6 |
| 01 Apr 87 | Defense delay to 16 Apr for negotiations | 91 | 54 | 15 |
| 16 Apr 87 | Defense delay terminates | 106 | 69 | 15 |
| 04 May 87 | Defense delay to 8 Jun | 124 | 87 | 33 |
| 08 Jun 87 | Defense delay terminates | 159 | 122 | 33 |
| 09 Jun 87 | Article 39a Session begins | 160 | 123 | 34 |
| 11 Jun 87 | Stay Order issued by AFCMR (indefinite) | 162 | 125 | 34 |
| 17 Jul 87 | Stay Order rescinded by AFCMR | 198 | 161 | 34 |
| 17 Jul 87 | Resumption of trial set for 22 Jul | 198 | 161 | 34 |
| 22 Jul 87 | Defense delay to 17 Aug | 203 | 166 | 34 |
| 17 Aug 87 | Defense delay terminates | 229 | 192 | 35 |
| 17 Aug 87 | Guilty pleas entered | 229 | 192 | 35 |

Appellate Exhibit XXV

**DISCUSSION.** The presumption of an Article 10 violation exists when more than 90 days pass from the time the accused is placed in pretrial confinement, and trial on the merits. United States v. Harvey, 23 M.J. 279 (C.M.A. memo op 1986). In determining accountability, the court has computed periods of time under R.C.M. 707(b)(1). In computing excluded periods of government accountability, the court applied R.C.M. 707(d), which incorporates the provisions of R.C.M. 707(c) except for subsection (c)(7). Thus, the period of any defense request for delay is deducted pursuant to R.C.M. 707(c)(3). The mental exam of the accused, which occurred during one such defense delay would otherwise have been deductible under R.C.M.(c)(1)(A). Article 39a sessions which preceded the AFCMR Stay Order are excluded as sessions on pretrial motions under R.C.M. 707(c)(1)(C).

As to the Stay Order issued by AFCMR, this court finds that it was not obtained in bad faith (ie: it was not "totally frivolous and without merit") nor was it obtained for the purpose of delay. Although it was determined by this court and the AFCMR that there was no basis for appeal under R.C.M. 908, there was at the time no binding caselaw so holding. In any event, the stay order issued by AFCMR was apparently issued in aid of that court's jurisdiction under the All Writs Act, and hence the period of delay resulting from that order is excluded under R.C.M. 707(c)(1)(E), if not under R.C.M. 707(c)(1)(D).

As to the resumption of trial after the stay order was lifted on the afternoon of Friday, 17 July 1987, this court set 22 July as the first practical trial date for all parties. The actual lifting of the stay order was an event the precise timing of which could not have been predicted by any trial participants. The period was selected to serve the same purpose as the Article 35 five-day statutory waiting period, and is excluded on that basis. See, United States v. Cherok, 22 M.J. 438 (C.M.A. 1986). In any event, the peculiar circumstances of this case also warrant excluding that period of time under R.C.M. 707(c)(2), since the accused had been arraigned, and thus another judge could not be substituted for mere logistical convenience.

**RULING.** The accused has not been denied a speedy trial. Of the 192 days from the inception of his pretrial confinement to entry of his guilty pleas, only 35 days are chargeable to the government, which has moved with due diligence to bring the accused to trial. The motion to dismiss for lack of a speedy trial is DENIED.

J. JEREMIAH MAHONEY, Colonel, USAF
Circuit Military Judge