GIERKE, Chief Judge
(concurring in the result):
I agree with the end result of the majority opinion: the Appellant’s rights under R.C.M. 707 were not violated. But I disagree with portions of the majority opinion’s analysis. Most significantly, in its discussion of the first period of delay, the majority opinion rewrites R.C.M. 707. The majority opinion also misinterprets our case law controlling the speedy trial implications of the Article 35 waiting period following the service of referred charges. While I cannot agree with portions of the majority’s reasoning, I respectfully concur in the result.
The majority opinion states, “Under R.C.M. 707(c), all pretrial delays approved by the convening authority are excludable so *43 long as approving them was not an abuse of the convening authority’s discretion.”[1] The opinion adds, “[W]here, as here, the convening authority has delegated to an investigating officer the ‘authority to grant any reasonably requested delays of the Article 32 investigation,’ then any delays approved by the Article 32 investigating officer also are excludable.”[2] Accordingly, the majority misrepresents what R.C.M. 707(c) actually says. R.C.M. 707(c) specifically discusses delays caused by stays ordered by appellate courts, hospitalization of the accused due to incompetence, and the accused’s unavailability while in the custody of the Attorney General. It concludes by observing, “[a]ll other pretrial delays approved by a military judge or the convening authority shall be similarly excluded.” The rule simply does not state, as the majority opinion represents, that pretrial delays approved by a convening authority’s delegate are excluded from Government accountability. Accordingly, the mere fact that the Article 32 investigating officer granted the delay — while expressly refusing to rule that the delay was excluded from Government accountability — does not resolve this ease.
The discussion to R.C.M. 707(c)(1) states that “[pjrior to referral, the convening authority may delegate the authority to grant continuances to an Article 32 investigating officer.” That discussion does not definitively resolve this issue for two reasons. First, the authority to grant a continuance is not necessarily the same as the authority to exclude the resulting delay from Government accountability. A rational military justice system could give the investigating officer the power to grant delays but reserve for other officials the power to exclude such delay from Government accountability. Nothing in R.C.M. 707(c), or even its discussion, would be inconsistent with such a system. Automatically excluding such delays from Government accountability is a matter of judicial interpretation, not obedience.
Second, the discussion accompanying the Rules for Courts-Martial, while in the Manual for Courts-Martial, United States (2002 ed.)(MCM), is not part of the presidentiallyprescribed portion of the MCM. The MCM expressly states that it consists of its “Preamble, the Rules for Courts-Martial, the Military Rules of Evidence, the Punitive Articles, and Nonjudieial Punishment Procedures.”[3] Absent from this list are the discussion accompanying the Preamble, the Rules for Courts-Martial, and the Punitive Articles, as well as the MCM’s appendices, including the MCM’s drafters’ analysis.[4] As Professor Gregory E. Maggs helpfully explains, “The President played no role in preparing these supplementary materials, and he did not promulgate them by executive order; on the contrary, these materials represent only the beliefs of staff personnel who worked on the Manual.”[5] So, as Professor Maggs concludes, the courts “do not violate the principle of deference to the President when they disagree with them.”[6]
Nevertheless, I agree with the majority opinion that the time was properly excluded. I reach this conclusion for two separate reasons. First, I would hold that a convening authority who expressly delegates to the investigating officer the power to grant continuances without reserving authority to exclude the delay from Government accountability also implicitly approves any resulting delay. Thus, the time is excluded not because R.C.M. 707(c) expressly removes from Government accountability delays granted by the convening authority’s delegate — it does not — but rather because the convening authority has implicitly approved the delay. Of course, the convening authority could expressly reserve the power to exclude delay from Government accountability. But in this case, the convening au *44 thority expressly granted the investigating officer the power to grant continuances while remaining silent about the investigating officer’s authority to exclude that delay from Government accountability. In that scenario, I would apply R.C.M. 707(c)’s automatic exclusion rule due to the convening authority’s implicit approval of the delay granted by his delegate.
The second reason for concluding the time was excluded from Government accountability was that the exclusion fell within the plain meaning of R.C.M. 707(c), though for a different reason than that offered by the majority opinion. In this ease, the military judge approved the pretrial delay, albeit after-the-fact. I would not hold that if the Government fails to seek approval for pre-referral delay from the proper authority that it is forever barred from seeking the delay’s exclusion from R.C.M. 707’s 120-day speedy trial clock. Rather, I would recognize that after charges have been referred, the Government may seek a ruling from the military judge retroactively excluding pre-referral delay from Government accountability. To rule otherwise would elevate form over substance. If the time should be excluded from Government accountability, a different result should not arise merely because a specific official did not bless the delay when it occurred. And allowing a military judge to retroactively exclude pre-referral delay from Government accountability is consistent with R.C.M. 707(c) because the pretrial delay would be “approved by a military judge.”
In this case, the military judge’s ruling approved the pretrial delay. That ruling was neither unreasonable nor an abuse of discretion.[7] Therefore, the time was properly excluded from Government accountability.
I also disagree with a portion of the majority opinion’s analysis concerning the excludability of the five-day statutory waiting period following the service of referred charges. The majority opinion reasons, “Because the five-day Article 35 period was neither requested nor necessary in this case to protect the accused, we find that the military judge did not abuse his discretion in approving this delay.”[8] But that analysis seems to have it backwards. Is not the case for excluding the Article 35 waiting period more compelling if the accused invoked his right to that article’s protections than if he did not? As we have held, “Although the 5 days for service can, under some circumstances, be excluded, United States v. Cherok, 22 M.J. 438 (C.M.A. 1986), it is not a ‘per se’ exclusion.”[9] Cherok was a two-judge opinion in which Chief Judge Everett concurred in the result. Cherok’s holding, therefore, can be no broader than Chief Judge Everett’s concurrence.[10] In Cherok, Chief Judge Everett explained that he reluctantly agreed that the five-day statutory waiting period should be excluded from Government accountability in that case because it “can be equated to defense-requested delay for purposes of Burton.”[11] The majority opinion stands this analysis on its head by holding that the five-day statutory waiting period is excluded because it was not requested by the defense and did not benefit the defense. Note also that Judge Cox’s opinion in Cherok was his alone, not that of this Court.
I nevertheless concur in the result because a portion of the five-day statutory waiting period occurred within a larger window of defense-requested delay. In this case, the five-day statutory waiting period included October 6 through October 10, 2001. The Government was prepared to proceed on Oc *45 tober 8, 2001, but the defense requested a delay until November 15, 2001. The military judge excluded from Government accountability both the five-day waiting period and the remaining period of the defense-requested continuance from October 11 through November 15, 2001. It is apparent that even without the five-day waiting period, the military judge would have excluded from Government accountability the period from October 8 through October 10, days on which the Government was prepared to proceed but for the defense-requested continuance. The exclusion of those three days combined with the six days at issue from the continuance of the Article 32 investigation and the other approved periods of delay results in exactly 120 days of Government-accountable delay. So even without regard to the other two days that fell within the Article 35 window, there was no R.C.M. 707 speedy trial violation. Accordingly, I agree with the majority opinion’s result, though not its reasoning.

. United. States v. Lazauskas, 62 M.J. 39, 41 (C.A.A.F.2005).

. Id. at 41-42.

. MCM, pmbl. V 4.

. See id. at pmbl. U 4 (discussion).

. Gregory E. Maggs, Judicial Review of the Manual for Courts-Martial, 160 Mil. L.Rev. 96, 115 (1999).

. Id.

. See MCM (2002 ed.), Analysis of the Rules of Courts-Martial A21-42.

. Lazauskas, 62 M.J. at 42.

. United States v. Longhofer, 29 M.J. 22, 30 n. 11 (C.M.A.1989).

. See Marks v. United States, 430 U.S. 188, 193, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.(citing Gregg v. Georgia, 428 U.S. 153, 169 n. 15, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976)).

. Cherok, 22 M.J. at 440 (Everett, C.J., concurring in the result) (citing United States v. Burton, 21 C.M.A. 112, 44 C.M.R. 166 (1971)).